COAST LAW GROUP, LLP
MARCO A. GONZALEZ (SBN 190832)
LIVIA BORAK BEAUDIN (SBN 259434)
NATALIE CLAGETT (SBN 351072)
1140 South Coast Highway 101
Encinitas, CA 92024
Ph: (760) 942-8505
Fx: (760) 942-8515
email: marco@coastlawgroup.com

Attorneys for Plaintiff
COASTAL ENVIRONMENTAL RIGHTS FOUNDATION

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

COASTAL ENVIRONMENTAL RIGHTS FOUNDATION, a non-profit corporation,

Plaintiff,

v.

AZTEC PERLITE COMPANY, INC., a California Corporation;

Defendant.

Civil Case No. **'24CV0385 WQHSBC**

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**

**(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*)**

Coastal Environmental Rights Foundation, ("CERF" or "Plaintiff"), by and through its counsel, hereby allege:

## I.    JURISDICTION AND VENUE

1.      This is a civil suit brought under the citizen suit enforcement provision of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA"). *See* 33 U.S.C. § 1365. This Court has subject matter jurisdiction over the parties and this action pursuant to 33 U.S.C. § 1365(a)(1) and 28 U.S.C. §§ 1331 and 2201.

2.      On November 28, 2023, Plaintiff issued a 60-day notice letter ("Notice Letter") to Aztec Perlite Company, Inc. ("Aztec" or "Defendant") as the owner and/or operator of the Facility located at 1518 Simpson Way, Escondido, California 92029 ("Aztec Facility" or "Facility"), regarding its violations of the Clean Water Act and California's General Permit for Discharges of Storm Water Associated with Industrial Activities (*National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001, Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ, as amended by Order No. 2014-0057-DWQ*), and *Order 2014-0057-DWQ as amended in 2015 and 2018* ("IGP"). True and correct copies of the Notice Letter and all enclosures are attached hereto as Exhibit 1 and incorporated herein.

3.      Plaintiff mailed the Notice Letter to the Facility's physical address, 1518 Simpson Way, Escondido, California 92029, and Aztec's Agent for Service of Process via certified mail.

4.      Plaintiff also mailed the Notice Letter to the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region IX, the Executive Director of the California State Water Resources Control Board ("State Board"), and the Executive Officer of the San Diego Regional Water Quality Control Board ("Regional Board") as required by 40 C.F.R. § 135.2(a)(1) and 33 U.S.C. § 1365(b)(1)(A).

5.      More than sixty (60) days have passed since the Notice Letter was served on

the Defendant and the State and Federal agencies. Plaintiff is informed and believes, and thereon alleges, that neither the EPA nor the State of California has commenced or is diligently prosecuting an action to redress the violations alleged in the Notice Letter and in this Complaint. *See* 33 U.S.C. § 1365(b)(1)(B). This action is not barred by any prior administrative penalty under Section 309(g) of the CWA. 33 U.S.C. § 1319(g).

6.    Venue is proper in the Southern District of California pursuant to 33 U.S.C. § 1365(c)(1) because the source of the violations is located within this judicial district.

## II.    INTRODUCTION

7.    Plaintiff seeks relief for Defendant's substantive and procedural violations of the IGP and the CWA resulting from its activities at the Aztec Facility.

8.    Specifically, Defendant has discharged and continues to discharge polluted storm water from the Aztec Facility to downstream waters and groundwater including Escondido Creek, San Elijo Lagoon, and the Pacific Ocean (collectively "Receiving Waters") in violation of the express terms and conditions of the Clean Water Act, 33 U.S.C. §§ 1301, 1342.

9.    Defendant has also violated and continues to violate the filing, monitoring, reporting, discharge, and management practice requirements, and other procedural and substantive requirements of the IGP. These are ongoing and continuous violations of the CWA and the IGP.

10.    With every rainfall event, hundreds of millions of gallons of polluted rainwater, originating from industrial facilities like the Aztec Facility flow into storm drain systems, local tributaries, and the Receiving Waters.

11.    Among the Receiving Waters are ecologically sensitive areas providing essential habitat for dozens of fish, hundreds of birds, and numerous mammal species, as well as vital macro- and micro-invertebrate species which are an important link in the food web between the producers (leaves, algae) and higher consumers such as fish.

12.    This discharge of polluted storm water and non-storm water from the Facility causes and/or contributes to the impairment of downstream Receiving Waters

and compromises or destroys their Beneficial Uses.

13.    Storm water and non-storm water contaminated with sediment, heavy metals, nutrients, and other pollutants harm the special biological significance of the Receiving Waters. Discharges of polluted storm water and non-storm water to the Receiving Waters pose toxic, carcinogenic, and reproductive threats to the public and adversely affect the aquatic environment.

14.    The polluted discharges from the Aztec Facility also harm the special aesthetic and recreational significance that the Receiving Waters have for people in the surrounding communities, including Plaintiffs' members. The public's, including CERF's members, use of the Receiving Waters for water contact recreation exposes people to toxic metals, carcinogenic chemicals, and other contaminants resulting from storm water and non-storm water discharges. Non-contact recreational and aesthetic opportunities, such as wildlife observation and aesthetic enjoyment, are also impaired by polluted discharges, as such discharges cause or contribute to ecosystem and food web degradation.

### III.    PARTIES

15.    Aztec Perlite Company, Inc. is a suspended California corporation.

16.    Aztec is the Owner and/or Operator of the Facility who enrolled under the IGP for the Facility in 2015.

17.    Plaintiff is informed and believes, and thereon alleges that Aztec is the current owner and operator of the property at 1518 Simpson Way, Escondido, CA, 92029.

18.    Plaintiff CERF is a non-profit public benefit corporation organized under the laws of the State of California with its office located in Encinitas, California. CERF was founded by surfers in North San Diego County and is active throughout California's coastal communities. CERF was established to advocate for the protection and enhancement of coastal natural resources and the quality of life for coastal residents. One of CERF's primary areas of advocacy is water quality protection and enhancement.

19.     Many of Plaintiff's members live and/or recreate in and around the Receiving Waters. Plaintiff's members use and enjoy the Receiving Waters to fish, sail, boat, kayak, paddle board, surf, swim, hike, view wildlife and scenery, and engage in scientific studies and restoration efforts, among other activities.

20.     Plaintiff's members have an interest in accurate information about Defendant's discharges. Defendant's failure to accurately report and monitor impedes Plaintiff's members' ability to fully use and enjoy the Receiving Waters for aesthetic, recreational, scientific, educational, and spiritual purposes.

21.     Defendant's failure to comply with the procedural and substantive requirements of the IGP and the CWA results in discharges of polluted storm water to the Receiving Waters. Defendants' polluted discharges degrade water quality and harm aquatic life in the Receiving Waters and thus impair Plaintiffs' members' use and enjoyment of those waters.

22.     The violations of the IGP and CWA at the Aztec Facility are ongoing and continuous. Thus, the interests of Plaintiff's members have been and will continue to be adversely affected by Defendant's failure to comply with the IGP and the CWA.

23.     The relief sought herein will redress the harms to Plaintiff's members caused by Defendant's activities. Continuing commission of the acts and omissions alleged herein will irreparably harm Plaintiff's members, for which they have no other plain, speedy, or adequate remedy at law.

24.     An actual controversy exists as to the rights and other legal relations between Defendant and Plaintiff.

## IV.     LEGAL BACKGROUND

### A.     The Clean Water Act.

25.     The CWA requires point source discharges of pollutants to navigable waters be regulated by an NPDES permit. 33 U.S.C. § 1311(a); 40 C.F.R. § 122.26(c)(1).

26.     Section 301(a) of the Clean Water Act prohibits the discharge of any pollutant into waters of the United States unless the discharge complies with the CWA.

Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of an NPDES permit issued pursuant to Section 402 of the CWA.

27.     "Waters of the United States" are defined as "navigable waters" and "all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including waters which are subject to the ebb and flow of the tide." 33 U.S.C. § 1362(7); 40 C.F.R. § 122.2.

28.     The "discharge of a pollutant" means, among other things, "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

29.     The EPA interprets waters of the United States to include not only traditionally navigable waters, but also other waters, including waters tributary to navigable waters, wetlands adjacent to navigable waters, and intermittent streams that could affect interstate commerce. *See* 40 C.F.R. § 122.2; 80 F.R. § 37054.

30.     The CWA confers jurisdiction over waters that are tributaries to traditionally navigable waters where the water at issue has a significant nexus to the navigable water.

31.     The CWA requires all point source dischargers, including those discharging polluted storm water, achieve technology-based effluent limitations by utilizing the Best Available Technology Economically Achievable ("BAT") for toxic and nonconventional pollutants and the Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants. 33 U.S.C. § 1311(b); 40 C.F.R. §125.3(a)(2)(ii)–(iii).

32.     Private citizens may sue under the Clean Water Act to enforce the specific provisions of California's General Permit. 33 U.S.C. § 1365(a)(1), (f)(6); *Russian River Watershed Prot. Comm. v. City of Santa Rosa,* 142 F.3d 1136, 1139 (9th Cir.1998).

**B.     California's IGP.**

33.     Section 402(p) of the Clean Water Act establishes a framework for regulating industrial storm water discharges under the NPDES permit program. It allows each state to administer its own EPA-approved NPDES permit program for regulating the discharge of pollutants, including discharges of polluted storm water.

34.     California is a state authorized by the EPA to issue NPDES permits. In

California, the State Board is charged with regulating pollutants to protect California's water resources. Cal. Water Code § 13001.

35.     The IGP is a statewide general NPDES permit issued by the State Board pursuant to Section 402 that regulates the discharge of pollutants from industrial sites.

36.     Between 1997 and June 30, 2015, the IGP in effect was *Order No. 97-03-DWQ* ("1997 Permit"). On July 1, 2015, pursuant to *Order No. 2014-0057-DWQ* ("2015 Permit"), the reissued 2015 IGP took effect. The 2015 Permit supersedes the 1997 Permit, except for enforcement purposes, and its terms are as stringent, or more stringent, than the terms of the 1997 Permit. On July 1, 2020, pursuant to *Order 2014-0057-DWQ as amended in 2015 and 2018* ("2020 Permit"), the reissued 2020 IGP took effect.

37.     In order to discharge storm water lawfully in California, certain industrial dischargers must secure coverage under the IGP and comply with its terms or obtain and comply with an individual NPDES permit. 2015 & 2020 Permits § I.A.12; Prior to beginning industrial operations, dischargers are required to apply for coverage under the IGP by submitting a Notice of Intent to Comply with the IGP ("NOI") to the State Board. *Id.* § I.A.17.

38.     Industrial activities covered under the IGP are described in Attachment A of the Permit. Facilities with SIC codes 20XX through 39XX require coverage by the Permit. *Id.*, Attachment A.

39.     Violations of the IGP are violations of the Clean Water Act. *Id.* § XXI.A.

**C.      The IGP Discharge Prohibitions.**

40.     The IGP contains certain absolute prohibitions. "All discharges of storm water to waters of the United States are prohibited except as specifically authorized by this General Permit or another NPDES permit." *Id.* § III.A.

41.     The Discharge Prohibitions forbid the direct or indirect discharge of liquids or materials other than storm water ("non-storm water discharges" or "NSWDs"), which are not otherwise authorized by an NPDES permit, to the waters of the United States. *Id.* § III.B.

42.     These provisions further prohibit storm water discharges and authorized non-storm water discharges which cause or threaten to cause pollution, contamination, or nuisance. *Id.* § III.C.

43.     The IGP prohibits discharges that violate any discharge prohibitions contained in local Water Quality Control Plans ("Basin Plan") or statewide water quality control plans and policies. *Id.* § III.D.

44.     The San Diego Basin Plan prohibits "the discharge of waste to inland surface waters, except in cases where the quality of the discharge complies with the applicable receiving water quality objectives." Basin Plan at 4-20.

45.     Accordingly, where the discharge does not meet water quality objectives, the discharge, absent an express "allowance for dilution" by the Regional Board, is prohibited by Discharge Prohibition III.D of the 2015 and 2020 Permits.

**D.     The IGP Effluent Limitations.**

46.     The IGP Effluent Limitation requires permittees to reduce or prevent pollutants associated with industrial activity in storm water discharges and authorized non-storm water discharges through the implementation of BAT and BCT. 2015 & 2020 Permits § V.A.

47.     Toxic pollutants are listed at 40 C.F.R. § 401.15 and include copper, lead, and zinc, among others. Conventional pollutants are listed at 40 C.F.R. § 401.16 and include chemical oxygen demand ("COD"), total suspended solids ("TSS"), oil and grease ("O&G"), pH, nitrate + nitrite nitrogen ("N+N"), iron, phosphorus, enterococcus, and fecal coliform, among others.

48.     Dischargers must develop and implement Best Management Practices ("BMPs") that constitute BAT and BCT to reduce or eliminate storm water pollution. 33 U.S.C. § 1311(b); 2015 & 2020 Permits § V.A.

49.     EPA's NPDES Storm Water Multi-Sector General Permit for Industrial Activities ("MSGP") includes numeric benchmarks for pollutant concentrations in storm water discharges ("EPA Benchmarks"). The 2015 MSGP went into effect on June 4,

2015, and the 2021 MSGP went into effect on March 1, 2021. The Benchmarks provide a relevant and objective standard to determine whether a facility's BMPs are effectively developed and implemented to achieve compliance with BAT/BCT standards. *See* 2015 and 2021 MSGPs, 80 Fed. Reg. 34,403, 34,405 (June 16, 2015); 86 Fed. Reg. 10,269; *see also* 2015 MSGP Fact Sheet at 52; 2021 MSGP Fact Sheet at 78.

50.    Discharges from an industrial facility containing pollutant concentrations that exceed EPA Benchmarks indicate the facility has not developed and/or implemented BMPs that meet BAT for toxic pollutants and BCT for conventional pollutants. *Santa Monica Baykeeper v. Kramer Metals, Inc.*, 619 F. Supp. 2d 914 (C.D. Cal. 2009).

51.    Failure to develop or implement BMPs that constitute BAT and BCT is an IGP violation. 33 U.S.C. § 1311(b); 2015 & 2020 Permits § V.A.

**E.    The IGP Receiving Water Limitations.**

52.    The IGP Receiving Water Limitation prohibits storm water discharges and authorized non-storm water discharges from adversely impacting human health or the environment. 2015 & 2020 Permits § VI.B.

53.    Storm water discharges with pollutant levels that exceed levels known to adversely impact aquatic species and the environment are violations of the IGP's Receiving Water Limitations. *Id.*

54.    The IGP Receiving Water Limitation prohibits storm water discharges that cause or contribute to an exceedance of any applicable water quality standard contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan. *Id.* § VI.A.

55.    Water quality standards ("WQSs") consist of both "designated uses" for a body of water and a set of "criteria" specifying the maximum concentration of pollutants that may be present in the water without impairing its suitability for designated uses. 33 U.S.C. § 1313(c)(2)(A).

56.    WQSs applicable to dischargers covered by the IGP include, but are not limited to, those set out in the Basin Plan, and in the Criteria for Priority Toxic Pollutants

for the State of California ("CTR"), 40 C.F.R. § 131.38. Both the CTR and Basin Plan WQSs must be attained at the point of discharge.

57.     The Basin Plan identifies designated "Beneficial Uses" for water bodies in the San Diego region under Clean Water Act Section 303. 40 C.F.R. § 131.

58.     The Beneficial Uses for Escondido Creek, downstream from the Facility, include: municipal and domestic water supply, agricultural water supply, water contact and non-contact water recreation, preservation of biological habitats of special significance, warm freshwater habitat, cold freshwater habitat, and wildlife habitat. Basin Plan, Table 2-2.

59.     The Beneficial Uses for the San Elijo Lagoon include: water contact and non-contact water recreation, preservation of biological habitats of special significance, estuarine habitat, wildlife habitat, rare, threatened, or endangered species, marine habitat, migration of aquatic organisms, spawning, and reproduction and/or early development.

60.     Surface waters that cannot support their Beneficial Uses are designated "impaired" water bodies pursuant to Section 303(d) of the Clean Water Act.

61.     According to the 2020/2022 303(d) List, the Escondido Creek is impaired for benthic community effects, bifenthrin, cyfluthrin, cypermethrin, DDT (Dichlorodiphenyltrichloroethane), indicator bacteria, iron, manganese, nitrogen, phosphate, phosphorus, pyrethroids, selenium, sulfates, total dissolved solids, toxicity, and turbidity.

62.     Polluted discharges from industrial facilities, such as the Aztec Facility, contribute to the degradation of these already-impaired surface waters, as well as aquatic-dependent wildlife.

63.     The following WQS are established by the Basin Plan for Escondido Creek: nitrogen, 1.0 mg/L; phosphorus, 0.1 mg/L; iron, 0.3 mg/L; pH "shall not be depressed below 6.5 or raised above 8.5." Basin Plan at 3-21; 3-46.

64.     Because the IGP Receiving Water Limitation prohibits discharges that cause or contribute to an exceedance of any applicable WQS, discharges with pollutant levels in

excess of the CTR criteria, the Basin Plan standards, and/or other applicable WQSs, absent any authorized mixing or dilution zone, are violations of Receiving Water Limitations of the IGP. *See* 2015 & 2020 Permits § VI.A.

**F.     The IGP Storm Water Pollution Prevention Plan Requirements.**

65.     Prior to beginning industrial activities, dischargers must develop and implement a Storm Water Pollution Prevention Plan ("SWPPP"). *Id.* §§ X.A–B.

66.     The objectives of the SWPPP are to identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm water discharges, to identify and implement site-specific BMPs to prevent the exposure of pollutants to storm water, and to reduce or prevent the discharge of polluted storm water from industrial facilities. *Id.* § X.

67.     The SWPPP must include, among other things: a narrative description and summary of all industrial activity, potential sources of pollutants, and potential pollutants; a site map indicating the storm water conveyance system, associated points of discharge, direction of flow, areas of actual and potential pollutant contact, including the extent of pollution-generating activities, nearby water bodies, and pollutant control measures; a description of storm water management practices; a description of the BMPs to be implemented to reduce or prevent pollutants in storm water discharges and authorized non-storm water discharges; the identification and elimination of non-storm water discharges; the location where significant materials are being shipped, stored, received, and handled, as well as the typical quantities of such materials and the frequency with which they are handled; a description of dust and particulate-generating activities; a description of individuals and their current responsibilities for developing and implementing the SWPPP, and a Monitoring Implementation Plan. *Id.* §§ X.A–I.

68.     Dischargers must evaluate their SWPPP at least annually and revise it as necessary to ensure compliance with the IGP. 2015 Permit §§ I.J.55, X.A.9, X.B.1; 2020 Permit §§ I.K.69, X.A.9, X.B.1. The IGP require dischargers to certify and submit via the Storm Water Multiple Application & Report Tracking System ("SMARTS") database

their SWPPP within 30 days whenever the SWPPP contains significant revisions. 2015 & 2020 Permits § X.B.2.

69.    The IGP requires dischargers to conduct an annual comprehensive site compliance evaluation that includes, *inter alia*, a review of all visual observation records, sampling and analysis results, and a review and evaluation of all BMPs. *Id.* § XV.

### G.    The IGP Monitoring and Reporting Requirements.

70.    Permittees must develop and implement a monitoring implementation plan ("MIP"). *Id.* §§ X.I, XI. The MIP objectives are to ensure BMPs have been adequately developed, implemented, and revised, and confirm compliance with the IGP's Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations. 2015 Permit §§ I.J.55–56, X.I, XI; 2020 Permit §§ X.I, X, I.K.69–70.

71.    The MIP thus aids in the implementation and revision of the SWPPP and measures the effectiveness of BMPs to prevent or reduce pollutants in storm water discharges. 2015 Permit § XX.B; 2015 Permit Fact Sheet § J at 43; 2020 Permit Fact Sheet § J at 138.

72.    Permittees must conduct monthly visual observations of storm water discharges, storm water drainage areas, and for the presence of unauthorized non-storm water discharges. 2015 & 2020 Permits § XI.A.1.

73.    A qualifying storm event ("QSE") is a precipitation event that produces a discharge for at least one drainage area and is preceded by forty-eight (48) hours with no discharge from any drainage area. *Id.* § XI.B.1.

74.    The Reporting Year is defined as July 1 through June 30. 2015 Permit § I.M.62.b; 2020 Permit § I.N.76.b. Permittees must collect and analyze storm water samples from two (2) QSEs within the first half of each Reporting Year (July 1 to December 31), and two (2) QSEs within the second half of each Reporting Year (January 1 to June 30). *Id.* § XI.B.2.

75.    Permittees must submit all sampling and analytical results for all samples via the SMARTS database within thirty days of obtaining the results. *Id.* § XI.B.11.

76.     Permittees must analyze samples for TSS, O&G, and pH, at a minimum. *Id.* § XI.B.6.a–b.

77.     Permittees must analyze samples for other pollutants likely to be present in significant quantities in the storm water discharged from the facility that serve as indicators of the presence of all industrial pollutants. *Id.* § XI.B.6.c.

78.     Permittees must analyze storm water samples for all applicable parameters required by the facility's SIC code, as set forth in Table 1 of the IGP. *Id.* § XI.B.6.d.

79.     Permittees must analyze storm water samples for additional applicable industrial parameters related to receiving waters with 303(d) listed impairments or approved Total Maximum Daily Loads. *Id.* § XI.B.6.e.

80.     Permittees must submit an annual report to the applicable Regional Board by July 15 of each year. The Annual report must include a (1) Compliance Checklist that indicates whether a discharger complies with, and has addressed all applicable requirements of the 2015 Permit, (2) an explanation for any non-compliance of requirements within the Reporting Year (3) an identification, including page numbers and/or Sections, of all revisions made to the SWPPP within the Reporting Year, and (4) the date(s) of the Annual Evaluation.

81.     All reports, certifications, or other information required by the Permit or requested by a regional board are signed by an authorized facility and certified for accuracy. *Id.* § XXI.K.

**V.      FACTUAL BACKGROUND**

**A.      Facility Site Information, Industrial Activities, and Pollutant Sources.**

82.     Aztec first obtained IGP coverage to conduct industrial operations at the Facility on July 31, 2015, under Waste Discharge Identification ("WDID") Number 9 37I003863.

83.     The Facility's Standard Industrial Classification ("SIC") code is 3999 (Manufacturing Industries), which requires Industrial General Permit coverage.

84.     The most recent Facility SWPPP publicly available was uploaded by the

Facility on June 4, 2020 ("2020 SWPPP").

85.    On October 30, 2023 the San Diego Water Quality Control Board terminated Aztec's permit due to Aztec's failure to pay $4497 in annual permit fees.

86.    Defendant is not currently enrolled under the IGP.

87.    According to the Facility's Notice of Intent to enroll, the Facility comprises approximately 1 acre and 75 percent is impervious.

88.    According to the Facility's 2020 SWPPP, the Facility manufactures perlite and engages in activities required to package and distribute perlite. 2020 SWPPP at § 2.1.2.

89.    The following pollutant materials exist at Aztec: perlite pellets and its constituents, motor fluids, manufacturing machinery, hydraulic oil, cardboard, and packaging wastes.

90.    Various industrial materials are also loaded and unloaded in multiple areas of the Facility.

91.    All discharges from the Facility flow into Escondido Creek, San Elijo Lagoon, and then the Pacific Ocean.

92.    Industrial activities occur, and industrial materials are handled, at various locations throughout the Facility either outdoors without adequate cover to prevent storm water and non-storm water exposure to pollutant sources, and/or without adequate secondary containment or other adequate treatment measures to prevent polluted storm water and non-storm water from discharging from the Facility.

93.    Many pollutants associated with industrial activities occurring at the Facility regularly escape via spills, dust emissions, wind dispersion, vehicle track out, or otherwise, resulting in pollutant dispersal throughout the Facility.

94.    Pollutants associated with the Facility's industrial activities have been and continue to be tracked by vehicles and dispersed via wind throughout the entire site, and on and off the Facility through ingress and egress. This results in trucks and vehicles tracking pollutants off-site, and aerial deposition of pollutants throughout the Facility as

well as offsite.

95.    One or more regulated industrial activities are conducted at locations throughout the entire Facility, and thus the entire Facility requires IGP coverage.

96.    Even if regulated industrial activities are not conducted at all locations throughout the entire Facility, BMPs or other controls do not adequately separate the storm water flows from portions of the Facility where non-regulated activities may occur from storm water flows from the regulated industrial activities.

97.    Due to both the Facility's lack of BMPs, and inadequacy of existing BMPs, storm water from areas of the Facility where industrial activities are conducted commingles with storm water from other areas of the Facility, and non-storm water commingles with storm water, and thus all discharges from the Facility are regulated under the IGP.

98.    Industrial activities at the Facility generate significant amounts of numerous pollutants. During rain events, these pollutants are washed off surfaces throughout the Facility and into storm water discharge points, which flow to Receiving Waters.

99.    that Defendant has failed and continues to fail to develop and/or implement required BMPs to prevent discharges of all non-storm water in violation of the IGP and the Clean Water Act.

100.    Defendant has discharged and continues to discharge polluted storm water and non-storm water from the Facility in violation of the IGP.

101.    Ehe Facility's polluted discharges have caused and/or contributed, and continue to cause and/or contribute, to the impairment of water quality in Receiving Waters in violation of the IGP.

102.    Elevated levels of numerous pollutants have resulted in the inability of Receiving Waters to support their Beneficial Uses.

**B.    The Facility Discharges Contaminated Storm Water in Violation of the IGP.**

103.    With every significant rain event, the Facility discharges polluted storm

water via storm drainage systems into the Receiving Waters.

104.    The Receiving Waters into which the Defendant discharges polluted storm water are waters of the United States and therefore the IGP properly regulates discharges to those waters.

105.    Storm water and non-storm water discharges from the Facility violate the Discharge Prohibitions and Effluent Limitations of the IGP.

**C.    Discharges of Polluted Storm Water from the Facility Violate IGP Discharge Prohibitions.**

106.    The Facility has discharged and continues to discharge numerous pollutants in concentrations that cause or threaten to cause pollution, contamination, or nuisance in and around Receiving Waters in violation of IGP. *See* 2015 & 2020 Permits § III.C.

107.    The California Water Code defines "contamination" as "an impairment of the quality of the waters of the state by waste to a degree which creates a hazard to the public health through poisoning or through the spread of disease."

108.    "Pollution" is defined as "an alteration of the quality of the waters of the state by waste to a degree which unreasonably affects . . . [t]he waters for beneficial uses."

109.    Storm water monitoring data collected by CERF demonstrates the Facility has discharged, and continues to discharge, concentrations of iron, manganese, nitrate and nitrite, and pH-affecting substances in excess of various water quality objectives, benchmarks, and other standards which were promulgated to protect human health and the environment, as well as the Beneficial Uses of Receiving Waters. *See* Ex. 1, Storm Water Monitoring Data. These polluted discharges cause or threaten to cause pollution, contamination, or nuisance in and around Receiving Waters in violation of Discharge Prohibition III.C.

110.    The Facility has discharged and continues to discharge unauthorized NSWDs in violation of IGP Discharge Prohibition III.B.

111.    Defendant has violated and continues to violate Discharge Prohibition III.D

of the Permit by discharging pollutants in excess of water quality objectives listed in the San Diego Basin Plan, and other "statewide water quality control plans" such as the CTR.

112.    Waste Discharge Prohibition number 5 of the San Diego Basin Plan states, "the discharge of waste to inland surface waters, except in cases where the quality of the discharge complies with the applicable receiving water quality objectives, is prohibited."

113.    "Waste" is defined as, "waste substances, liquid, solid, gaseous, or radioactive, associated with human habitation, or of human or animal origin, or from any producing, manufacturing, or processing operation," which includes discharges of pollutants in storm water. California Water Code, § 13050(d).

114.    Accordingly, where the "quality of the discharge" does not meet water quality objectives, the discharge, absent an express "allowance for dilution" by the Regional Board, is prohibited by Discharge Prohibition III.D of the 2015 and 2020 IGP.

115.    Information available to Plaintiff, including its review of publicly available information and observations, indicates that no express allowance for dilution has been granted to the Facility's discharges or to the downstream Receiving Waters.

116.    As such, Defendant has violated and continues to violate Discharge Prohibition III.D of the 2015 and 2020 Permits by discharging pollutants in excess of water quality objectives listed in the San Diego Basin Plan.

117.    The Facility has discharged and continues to discharge numerous additional pollutants in concentrations exceeding water quality objectives in violation of Discharge Prohibition III.D. For example, perlite contains iron, manganese, and aluminum, which are metals of concern for Escondido Creek. Further, packaging, shipping, receiving, and other associated activities can release pH-affecting substances, and N+N.

118.    The Facility has never sampled for these parameters. The discharge of iron, manganese, N+N, and pH-affecting substances such as acid are governed by the San Diego Basin Plan water quality objectives.

119.    The Facility discharges these pollutants in excess of Basin Plan objectives and CTR criteria in violation of Discharge Prohibition III.D.

120.    Each time the Facility discharges polluted storm water or non-storm water in violation of Sections III.B–III.D of the Discharge Prohibitions provisions of the IGP is a separate and distinct violation of the IGP and Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a).

121.    These Discharge Prohibition violations are ongoing and will continue every time the Facility discharges polluted storm water and non-storm water without developing and/or implementing BMPs that prevent such discharges.

122.    The Facility has been in violation of these Discharge Prohibitions since at least November 1, 2018 and is subject to civil penalties for all violations of the Clean Water Act occurring since that time. *See* Exhibit 1 (setting forth dates of all precipitation events during the past five years in the Notice Letter attachments).

**D.    Discharges of Polluted Storm Water from the Facility Violate IGP Effluent Limitations.**

123.    Defendant has failed and continues to fail to develop and/or implement BMPs as required to achieve compliance with the BAT/BCT standards to prevent the discharge of polluted storm water from the Facility. *See* 2015 & 2020 Permits § V.A.

124.    Visual observations of the Facility confirm that it lacks adequate BMPs.

125.    BMPs that would achieve BAT/BCT have not been developed and/or implemented at the Facility. Not only has the SWPPP remained unchanged and inadequate for nearly four years, but the Regional Water Board and City of Escondido in July of 2021 found (1) that perlite escapes from the furnace hopper and during final bagging, which creates a cloudy mass around the system; (2) the green mesh on the side of the fence must be replaced; (3) straw wattles on ground outside fence should be replaced periodically; (4) clouds noticed above pallets of bagged perlite; (5) raw materials staged at the furnace and hopper; (6) perlite and particulates on ground near dumpster; (7) seepage from perlite bagging areas; (8) raw materials stored in totes without a cover to prevent windblown dispersion; and (9) spills of perlite on the pavement.

126. On July 19, 2021 the Regional Board issued an inspection report requiring Aztec to take corrective actions that must include updating its SWPPP to include BMPs to address the aforementioned pollutant-generating activities and dispersion mechanisms.

127. Additionally, as reflected in the Facility's monitoring data, the Facility's pH is at or below the applicable Basin Plan Water Quality Objective, indicating the BMPs are insufficient, and thus fail to achieve BAT/BCT.

128. Each time Defendant discharges polluted storm water in violation of Effluent Limitation V.A of the 2015 and 2020 Permits is a separate and distinct violation of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a).

129. These effluent limitation violations are ongoing and will continue every time the Facility discharges polluted storm water and non-storm water without developing and/or implementing BMPs that achieve compliance with the BAT/BCT standards.

130. The Facility has been in violation of these Effluent Limitations since at least November 1, 2018 and is subject to civil penalties for all violations of the Clean Water Act occurring since that time.

**E. Defendant Has Violated and Continues to Violate IGP SWPPP Requirements.**

131. Defendant has conducted and continues to conduct operations at the Facility with an inadequately developed and/or implemented SWPPP.

132. Aztec submitted a SWPPP to SMARTS on July 31, 2015 and uploaded an amended or updated SWPPP to SMARTS on June 4, 2020.

133. The Facility is currently operating without a valid SWPPP.

134. The Facility SWPPP fails to contain BMPs that would prevent the exposure of pollutants to storm water, the comingling of non-storm water with storm water, and the subsequent discharge of pollutants from the Facility, in violation of the IGP.

135. The 2020 SWPPP does not include: detailed information about its Pollution Prevention Team; an adequate description of potential pollutant sources; a description of

the Facility's industrial processes, the type, quantity, and character; descriptions of each material handling and storage area; descriptions of industrial activities that generate significant amounts of dust or particulate.

136.    The SWPPP does not include an adequate pollutant source assessment. It fails to provide: an adequate description of areas with likely sources of pollutants in industrial storm water discharges; the approximate quantity, physical characteristics (e.g., liquid, powder, solid, etc.), and locations of each industrial material handled, produced, stored, recycled, or disposed; the degree to which the pollutants associated with those materials may be exposed to, and mobilized by contact with, storm water; the direct and indirect pathways by which pollutants may be exposed to storm water or authorized NSWDs; all sampling, visual observation, and inspection records; the effectiveness of existing BMPs to reduce or prevent pollutants in industrial storm water discharges and authorized NSWDs; the estimated effectiveness of implementing, to the extent feasible, minimum BMPs to reduce or prevent pollutants in industrial storm water discharges and authorized NSWDs; and, the identification of the industrial pollutants related to the receiving waters with 303(d) listed impairments that may be causing or contributing to an exceedance of a water quality standard in the receiving waters. IGP § X.G.2.a.i-ix.

137.    Because the Facility has not conducted the required pollutant assessment, the SWPPP does not include areas where minimum BMPS may not be adequate or where no exposure to industrial activities or materials occurs. IGP § X.G.2.b-c.

138.    The SWPPP also fails to acknowledge additional parameters, such as metals and nutrients, likely to be present in its industrial storm water. *Id.* § X.G.2.d. As such, the SWPPP has not been "developed, implemented, and revised as necessary to be consistent with any applicable municipal, state, and federal requirements that pertain to the requirements in this General Permit." IGP § X.D.2.a.

139.    The Facility's SWPPP and site map also fail to accurately reflect all drainage areas, discharge points, and flow direction as required by Section X.E of the IGP. For instance, the site map does not include:

- Accurate locations of storm water collection and conveyance systems, associated discharge locations, and direction of flow. *Id.* § X.E.3.b.
- Accurate locations and descriptions of structural control measures that affect industrial storm water discharges, authorized NSWDs, and/or run-on; *Id.* § X.E.3.c.
- Accurate locations where materials are directly exposed to precipitation and the locations where identified significant spills or leaks (Section X.G.1.d) have occurred. *Id.* § X.E.3.e.
- Areas of industrial activity subject to the Permit. *Id.* § X.E.3.f.
- All industrial storage areas and storage tanks, shipping and receiving areas, fueling areas, vehicle and equipment storage/maintenance areas, material handling and processing areas, waste treatment and disposal areas, dust or particulate generating areas, cleaning and material reuse areas, and other areas of industrial activity that may have potential pollutant sources. *Id.* § X.E.3.f.

140.   Defendant has operated the Facility since at least November 1, 2018 without a valid SWPPP. Every day the Facility operates with an inadequately developed and/or implemented SWPPP, and/or with an improperly revised SWPPP is a separate and distinct violation of the IGP and the Clean Water Act.

141.   Defendant has failed to develop and/or implement BMPs that adequately: minimize the exposure of pollutants to storm water at the Facility; control and minimize polluted runoff from the Facility; treat and remove pollutants in storm water prior to discharge; prevent or control contaminated storm water from being discharged from the Facility; and prevent or control contaminated NSWDs from being discharged from the Facility.

142.   Neighboring properties have complained since at least 2020 about perlite wind and water transportation to nearby properties and the storm drain - City of Escondido and Regional Water Board inspections confirm the routine dispersal of perlite and its discharge into nearby storm drains. The complaints report (1) the Facility using a leaf blower to blow perlite into the street, (2) poor equipment that results in perlite

spillage, and (3) piles of raw materials wind-blown into the streets.

143.    An inspection by City of Escondido in June of 2020 reveals tattered tarps to cover outdoor stored raw materials and bagged material without a cover. An inspection by the Regional Water Board in June of 2021 confirmed windblown material in the street and air and that Facility was operating outside the SWPPP's claimed hours, at 8:15 P.M.

144.    CERF inspections during sampling events confirm perlite visible throughout the Facility and on public sidewalks and rights of way.

145.    Defendants have been in daily and continuous violation of the IGP's SWPPP requirements since at least November 1, 2018.

146.    These violations are ongoing and Defendant is subject to civil penalties for all violations of the Clean Water Act occurring since November 1, 2018.

**F.      Defendant Has Failed to Develop, Implement, and/or Revise an Adequate Monitoring Implementation Plan at the Aztec Facility.**

147.    Defendant has conducted and continues to conduct operations at the Facility with an inadequately developed, implemented, and/or revised MIP.

148.    Defendant has failed and continues to fail to collect the required number of storm water samples for each reporting period.

149.    The IGP requires Permittees to collect samples from two storm events within the first half of each Reporting Year (July 1 to December 31), and from two storm events within the second half of each Reporting Year (January 1 to June 30).

150.    Numerous QSEs and large storm events have occurred since November 1, 2018. *See* Ex. 1, NOAA Precipitation Data attached to Notice Letter.

151.    Defendant has failed and continues to fail to develop and/or implement a MIP that requires the collection of storm water samples "from each drainage area at all discharge locations" at the Facility in violation of Industrial General Permit. *See* 2015 & 2020 Permits § XI.B.4.

152.    While Section XI.C.4 of the Permit allows permittees to reduce the number of locations to be sampled, there is no indication the Facility Owners and/or Operators

have complied with the requirements of Section XI.C.4 to justify sampling a reduced number of discharge locations at the Facility.

153.   The Facility also failed to collect any samples during the 2022/2023, 2021/2022, 2020/2021, and 2018/2019 reporting years.

154.   As such, the Facility's failure to collect samples from "each drainage area at all discharge locations" is an ongoing violation of the IGP. *See* 2015 & 2020 Permits § XI.B.4.

155.   The Facility Owners and/or Operators have failed and continue to fail to sample and analyze storm water discharges for all parameters required by the Industrial General Permit.

156.   The Facility has similarly failed to test for pollutants related to the impairments of the Receiving Waters as required by Section XI.B.6.e of the IGP.

157.   Defendant has failed and continues to fail to sample for pollutants that may contribute to Receiving Water impairments, such as nutrients and metals affecting toxicity (such as iron, manganese, and zinc). *See* 2015 & 2020 Permit § XI.B.6.e.

158.   The IGP requires dischargers to conduct visual observations of storm water discharges, of authorized and unauthorized NSWDs, and of BMPs. Information available to CERF, including Aztec's complete ignorance of the Permit, its terms, or of the Facility's enrollment thereunder, as well as the Facility's failure to collect the required number of storm water samples, indicates that Aztec fails to consistently, and/or adequately, conduct the required discharge observations and monitoring of BMPs.

159.   Defendants has failed and continues to fail to conduct visual observations of storm water discharges, of authorized and unauthorized NSWDs, and of BMPs required by the IGP.

160.   Every day the Facility operates with an inadequately developed and/or implemented MIP, or with an improperly revised MIP is a separate and distinct violation of the IGP and the Clean Water Act.

161.   Defendant has been in daily and continuous violation of the IGP's MIP

requirements since at least November 1, 2018.

162. These violations are ongoing, and Defendant is subject to civil penalties for all violations of the IGP and Clean Water Act occurring since at least November 1, 2018.

## VI.    CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

### Failure to Maintain Coverage under the IGP

### 33 U.S.C. §§ 1311(a) and 1342

163. Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

164. Section 301(a) of the Act, 33 U.S.C. §1331(a), prohibits the discharge of any pollutant from any point source to waters of the United States, except for discharges in compliance with an NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. §1342(p).

165. Defendant discharges pollutants from the Aztec Facility into Escondido Creek, Olivenhain Dam and Reservoir, San Dieguito Reservoir, San Dieguito River, San Elijo Lagoon, and the Pacific Ocean through storm water discharges.

166. From at least October 30, 2023 to the present, Defendant discharged pollutants without a valid NPDES Permit as required by Sections 301(a) and 402(p)(2)(B) of the Act, 33 U.S.C. §1331(a), and §1342(p)(2)(B).

167. From at least October 30, 2023 to the present, Defendant has discharged pollutants in excess of permit limits, in violation of the IGP discharge prohibitions and in violation of Section 301(a) of the Act, 33 U.S.C. §1331(a).

168. Plaintiff is further informed, believes, and thereon alleges that from at least October 30, 2023 to the present, Defendant has operated without an individual NPDES permit for its polluted storm water discharges in violation of Sections 301(a) and 402(p)(2)(B) of the Act, 33 U.S.C. §1331(a), and §1342(p)(2)(B).

169. The polluted storm water discharges from the Aztec Facility are therefore unlawful discharges from point sources into waters of the United States within the

meaning of Section 301 of the Act, 33 U.S.C. §1331.

170.   These violations are ongoing and continuous. Defendant will continue to be in violation of the Industrial Permit requirements each day the Aztec Facility discharges contaminated storm water without an NPDES permit.

171.   Every day that Defendant has discharged and/or continues to discharge polluted storm water from the Aztec Facility without an NPDES permit is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

172.   By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each and every violation of the CWA occurring from October 30, 2023 to the present pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

173.   Wherefore, Plaintiff prays judgment against Defendant as set forth hereafter.

### SECOND CAUSE OF ACTION

**Discharges of Contaminated Storm Water in Violation of the IGP's Discharge Prohibitions and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a), and 1365(f)**

174.   Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

175.   Defendant has discharged and continues to discharge unauthorized non-storm water in violation of Section III.B of the IGP.

176.   Defendant has discharged and continues to discharge numerous pollutants in concentrations that cause or threaten to cause pollution, contamination, or nuisance in and around Receiving Waters in violation of Section III.C of the IGP.

177.   Defendant has discharged and continues to discharge numerous pollutants in excess of water quality objectives listed in the Basin Plan in violation of Section III.D of the IGP.

178.   Defendant has been in violation of the IGP Discharge Prohibitions at the

Facility every day from at least November 1, 2018 to the present. Defendant's violations of the IGP Discharge Prohibitions are ongoing and continuous.

179.    Each and every violation of the IGP Discharge Prohibitions is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a). By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each and every violation of the CWA occurring from November 1, 2018 to the present pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

### THIRD CAUSE OF ACTION

**Discharges of Contaminated Storm Water in Violation of the IGP's
Effluent Limitations and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a), and 1365(f)**

180.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

181.    Defendant failed and continues to fail to reduce or prevent pollutants associated with industrial activities from discharging through implementation of BMPs that achieve BAT/BCT at the Facility.

182.    Discharges of storm water containing levels of pollutants that do not achieve compliance with BAT/BCT standards occur every time storm water discharges from the Facility.

183.    Defendant's failure to develop and/or implement BMPs that achieve the pollutant discharge reductions attainable via BAT or BCT at the Facility is a violation of the IGP and the CWA. *See* 2015 & 2020 Permits § V.A; *see also* 33 U.S.C. § 1311(b).

184.    Defendant violated and continues to violate the IGP Effluent Limitations each time storm water containing levels of pollutants that do not achieve BAT/BCT standards discharge from the Facility.

185.    Defendant has been in violation of the IGP Effluent Limitations at the Facility every day from at least November 1, 2018 to the present. Plaintiff is informed,

believes, and thereon alleges Defendant's violations of the IGP Effluent Limitations and the CWA are ongoing and continuous. Defendant will continue to be in violation of the IGP and the CWA each day it fails to adequately develop and/or implement BMPs to achieve BAT/BCT at the Facility.

186.   Each day that Defendant operates the Facility without adequately developing and/or implementing BMPs that achieve BAT/BCT in violation of the IGP is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

187.   Each day that Defendant operates the Facility without adequately developing and/or implementing BMPs that comply with Effluent Limitations in violation of the IGP is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a). By committing the acts and omissions alleged above, Defendants are subject to civil penalties for each and every violation of the CWA occurring since November 1, 2018. 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

## FOURTH CAUSE OF ACTION
**Failure to Adequately Develop, Implement, and/or Revise the Facility's Storm Water Pollution Prevention Plans in Violation of the IGP and the Clean Water Act.**

### 33 U.S.C. §§ 1311(a), 1342, 1365(a), and 1365(f)

188.   Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

189.   Defendant has failed and continues to fail to develop and/or implement adequate SWPPPs for the Facility.

190.   Defendant has failed and continues to fail to adequately revise the SWPPP for the Facility.

191.   Defendant conducts operations at the Facility each day without an adequately developed, implemented, and/or revised SWPPP. Defendant's failure to adequately develop, implement, and/or revise SWPPPs for the Facility is a violation of the IGP and the Clean Water Act. *See* 2015 & 2020 Permits § X; *see also* 33 U.S.C. § 1311(b).

192.   Defendant has been in violation of the IGP SWPPP requirements at the Facility every day from at least November 1, 2018, to the present. Defendant's violations of the IGP SWPPP requirements and the CWA at the Facility are ongoing and continuous.

193.   Defendant will continue to be in violation of the IGP and the CWA each day it fails to adequately develop, implement, and revise the Facility SWPPP.

194.   Each day Defendant operates the Facility without developing and/or implementing an adequate SWPPP is a separate and distinct violation of Section 301(a) of the CWA 33 U.S.C. §1311(a). By committing the acts and omissions alleged above, Defendant is subject to civil penalties for each and every violation of the CWA occurring since July 27, 2018. 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

## FIFTH CAUSE OF ACTION

**Failure to Adequately Develop, Implement, and Revise Adequate Monitoring Implementation Plan in Violation of the IGP and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a), and 1365(f)**

195.   Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

196.   Defendant has failed and continues to fail to develop and/or implement an adequate MIP for the Facility. Defendant operates the Facility each day without an adequately developed, implemented, and/or revised MIP.

197.   Defendant's failure to adequately develop, implement, and/or revise the MIP for the Facility is a violation of the IGP and the Clean Water Act. *See* 2015 & 2020 Permits § XI; *see also* 33 U.S.C. § 1311(b).

198.   Defendant has been in violation of the IGP MIP requirements every day from at least November 1, 2018, to the present. Defendant's violations of the IGP MIP requirements and the CWA at the Facility are ongoing and continuous.

199.   Defendant will continue to be in violation of the IGP and the CWA each and every day its fails to adequately develop, implement, and/or revise the Facility MIP.

200.   Each day that Defendant operates the Facility without developing, implementing, and/or revising an adequate MIP is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a). By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each and every violation of the CWA occurring since November 1, 2018. 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

## SIXTH CAUSE OF ACTION

### Failure to Properly Monitor in Violation of the IGP.
### 33 U.S.C. §§ 1311(a), 1342, 1365(a), and 1365(f)

201.   Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

202.   Defendant has failed and continues to fail to conduct the requisite visual observations of storm water discharges at the Facility in violation of the IGP and the CWA. *See* 2015 & 2020 Permits § XI.A; *see also* 33 U.S.C. § 1311(b).

203.   Defendant has failed and continues to fail to collect and analyze the required number of storm water samples at the Facility in violation of the IGP and the CWA. 2015 Permit & 2020 Permits §§ XI.B.1–3; 33 U.S.C. § 1311(b).

204.   Defendant has failed and continues to fail to analyze all collected samples for all required parameters in violation of the IGP and the CWA. *See* 2015 & 2020 Permits § XI.B.6; *see also* 33 U.S.C. § 1311(b).

205.   Defendant has failed and continues to fail to collect storm water samples "from each drainage area at all discharge locations" at the Facility in violation of IGP and CWA. *See* 2015 & 2020 Permits § XI.B.4; *see also* 33 U.S.C. § 1311(b).

206.   Defendant has failed and continues to fail to comply with the IGP's monitoring requirements at the Facility since at least November 1, 2018. Defendant's violations of the IGP monitoring requirements and the Clean Water Act are ongoing and continuous.

207.   Defendant will continue to be in violation of the IGP and the CWA each and

every day it fails to comply with the IGP's monitoring requirements.

208.   Each and every violation of the IGP's monitoring requirements is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a). By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each and every violation of the CWA occurring since November 1, 2018. 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

### SEVENTH CAUSE OF ACTION

**Failure to Report as Required in Violation of the IGP and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a), and 1365(f)**

209.   Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

210.   Defendant has failed and continues to fail to submit accurate and/or complete Annual Reports for the Facility.

211.   Defendant's failure to submit complete and accurate Annual Reports is a violation of the IGP and the Clean Water Act. *See* 2015 & 2020 Permits § XVI; *see also* 33 U.S.C. § 1311(b).

212.   Defendant conducts operations at the Facility each day without reporting as required by the IGP. Defendant has been in violation of the IGP's reporting requirements every day since at least November 1, 2018. Defendant's violations of the reporting requirements of the IGP and the CWA are ongoing and continuous.

213.   Defendant will continue to be in violation of the IGP and the CWA each and every day it fails to comply with the IGP reporting requirements at the Facility.

214.   Each and every violation of the IGP reporting requirements is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a). By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each and every violation of the CWA occurring since November 1, 2018. 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

## VII.   RELIEF REQUESTED

215.   Plaintiff respectfully request that this Court grant the following relief:

a.     A court order declaring the Defendant has violated and to be in violation of Sections 301(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1311(a) and (b), for discharging pollutants from the Facility in violation of a permit issued pursuant to Section 402(p) of the CWA, 33 U.S.C. § 1342(p), for failing to comply with discharge prohibitions, effluent limitations which include BAT/BCT requirements, and for failing to comply with the other substantive and procedural requirements of the IGP as set forth within this Complaint;

b.     A court order enjoining Defendant from discharging pollutants from the Facility to surface waters in violation of the Clean Water Act and IGP;

c.     A court order requiring Defendant to implement affirmative injunctive measures designed to eliminate Defendant's violations of the substantive and procedural requirements of the IGP and the Clean Water Act;

d.     A court order assessing civil monetary penalties for each violation of the CWA at $64,618 per day per violation for violations that occurred after November 2, 2015 and assessed on or after January 6, 2023, as permitted by CWA Section 309(d), 33 U.S.C. § 1319(d) and Adjustment of Civil Monetary Penalties for Inflation, and 40 C.F.R. § 19.4.

e.     A court order awarding Plaintiff its reasonable costs of suit, including attorney, witness, expert, and consultant fees, as permitted by Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d); and

/././

/././

/././

/././

/././

/././

      f.     Any other relief as this Court may deem appropriate.

Dated: February 27, 2024

Respectfully submitted,

COAST LAW GROUP LLP
By: s/Livia B. Beaudin
LIVIA B. BEAUDIN
Attorney for Plaintiffs
COASTAL ENVIRONMENTAL
RIGHTS FOUNDATION
E-mail: livia@coastlawgroup.com
